# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

AMANDA HOUSE and
SCOTT HOUSE                                                            PLAINTIFFS

v.                                              No. 3:13cv216-MPM-SAA

BLAKE GREEN, individually and in his official capacity;
MAURY SCHUH, individually and in his official capacity;
and THE CITY OF PLANTERSVILLE, MISSISSIPPI.
                                                                        DEFENDANTS

## ORDER

Before the court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs have responded, and the court, having reviewed all memoranda of law, concludes that the motions as pertaining to defendants Blake Green, individually and in his official capacity, as well as The City of Plantersville should be granted. The motion as pertaining to defendant Maury Schuh should be denied.

## Facts

On April 11, 2012 Amanda House's minor grandson, William Em, suffered an untimely death due to injuries suffered in an ATV accident. Amanda House, her husband Scott House, and the deceased child's mother, Robyn Em, buried William on Sunday, April 15. Prior to the accident, Amanda and Scott House had provided a home for Robyn and William Em, as well as for Josh West and Jaxson West, Robyn's infant child with Josh. However, by Monday, April 16, 2012, the family's domestic tranquility had substantially deteriorated. On that day, Amanda House placed a frantic 911-emergency call to the Plantersville Police Department requesting assistance in a domestic dispute. Officer Blake Green responded to that call, and arriving at the

scene, observed a dispute between Amanda House and Robyn Em concerning Robyn's decision to move out of the House's residence with her minor son, Jaxson. Scott House, seeking shelter from the domestic storm, had locked himself and Jaxson in the House's bedroom. Upon Officer Green's inquiry, Amanda House confirmed that a handgun was in the bedroom in which Jaxson and Mr. House were holed up. Amanda House, fearing for Jaxson's safety, requested Officer Green to call the Department of Human Services to address the issue of Jaxson being removed from her home. Officer Green refused to make the call and informed Mrs. House that she would have to relinquish Jaxson to the custody of the child's mother, Robyn Em.

Though subsequent facts are disputed by the parties, this court will, to the extent plausibly possible, construe the facts in a light most favorable to the plaintiffs. Amanda House contends that since Officer Green did not call DHS as she requested, she told Officer Green "[i]f y'all do allow her to take the child, y'all will be responsible for his well-being,"[1] and "[i]f something happens to Jaxson, I am holding 'you' [Officer Green] responsible."[2] It is also undisputed that Amanda House had access to the loaded gun in her bedroom,[3] was involved in a domestic disturbance,[4] and was "upset."[5] The Plantersville Chief of Police, Maury Schuh, was not present during the time that any of these statements were made.[6] Confronted with these facts and feeling threatened, Officer Green arrested Amanda House, charged her with simple assault and disturbance of family, and transported her to the Lee County jail for processing.

Scott House went to the jail but was unable to obtain a bond for his wife's release. She remained in jail overnight. Scott House then returned home, when he received a phone call from

---

[1] Dep. Of Amanda House at 46:15-16.
[2] *See* Complaint at ¶ 15.
[3] Dep. of Amanda House at 55:16-22.
[4] *Id.* at 66:13-16.
[5] *Id.*
[6] *Id.* at 67:18-23.

Amanda, who contends that Scott told her "I might not be here when you get home tomorrow."[7] Concerned for her husband's safety, Amanda asked the officer on duty "if she had anyone that was going off duty" that could check on Scott.[8] Officer Green then went back to the House's residence after receiving a "[t]hreatening 10-66" call, a call that he interpreted to mean a "threatening suicide" call from the House's residence.[9] En route, Officer Green called Chief Maury Schuh and alerted him that there had been a threatening suicide call from the House's residence. Schuh told Officer Green to "stop doing what [he was] doing and wait for him to get there."[10] Once Chief Schuh arrived at the scene, he retrieved Officer Green's Taser, and both officers approached the House's residence.[11] Scott House, who was pacing the living room floor, heard "[b]anging on the door."[12] He announced that he would "be there in a minute" and placed his two chihuahuas, Precious and Sony, in another room.[13] Since Scott did not "come instantly" to the door, the officers "started screaming" at him.[14] As Scott opened the door, he observed Officer Green, with his gun drawn, standing right beside Chief Schuh, who immediately tasered him multiple times.[15] Scott was then handcuffed for "[a]bout 15 minutes" by Officer Green, before being "drug . . . to the ambulance" by Officer Green, and eventually placed in the care of the paramedics attending the scene.[16]

## Standard of Review

---

[7] *Id.* at 73:23-24; *see also* Complaint at ¶ 22.
[8] *See* Dep. of Amanda House at 73:16-20.
[9] *See* Dep. of Blake Green at 36:1-25.
[10] *Id.* at 37:1-15.
[11] *Id.* at 39:17-21.
[12] Dep. of Scott House at 81:9-24.
[13] Plaintiffs Amanda & Scott House's Memorandum Brief in Support of Their Response to Defendant's City of Plantersville & Blake Green's Motion for Summary Judgment and Defendant Schuh's Motion for Summary Judgment at 7.
[14] Dep. of Scott House at 81:22-24.
[15] *Id.* at 50:3-20.
[16] *Id.* at 53:9-25 through 54:1-22.

A) *Summary Judgment Under Fed. R. Civ. P. 56*

Summary judgment is only appropriate when there exists no genuine issue of material fact such that the movant is entitled to a judgment by the court as a matter of law. *See* Fed. R. Civ. P. 56(c). The non-movant's evidence must be construed as such that all reasonable inferences are drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1996). The party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

B) *Qualified Immunity*

If a defendant properly invokes a qualified immunity defense, then burden shifts to the plaintiff to negate it. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). In order to rebut the defense of qualified immunity, the plaintiff must establish, with all facts and inferences drawn in favor of the plaintiff, "a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* The defendants seeking qualified immunity, if unsatisfied with the determinations of this court, have the right to an immediate interlocutory appeal based on the denial of qualified immunity, and the appellate court will assume the facts of this court in determining whether, as a matter of law, such facts preclude qualified immunity. *Kinney v. Weaver*, 367 F.3d 337, 376 (5th Cir. 2004).

## Qualified Immunity of Individual Officers

Both plaintiffs have alleged numerous causes of actions against both named individual defendants. Any discussion of qualified immunity, and the protection it affords, will have to be evaluated, specifically for each individual defendant in this case.

In determining whether an officer has stepped outside of the scope of protection afforded by qualified immunity, courts must look to whether or not "(1) an official's conduct violated a

constitutional right of the plaintiff and (2) that right was clearly established at the time of the violation." *Williams v. City of Cleveland*, 736 F.3d 684, 688 (5th Cir. 2013) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). If the constitutional right implicated resembles one's Fourth Amendment right against the use of excessive force by arresting officers, the proper inquiry is if there existed "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Id.* (quoting *Rockwell v. Brown*, 664 F.3d 984, 991 (5th Cir. 2013)). If the constitutional right allegedly violated is that resembling wrongful arrest, by way of the Fourth *or* Fourteenth Amendment, then "[t]hese causes of action implicate the constitutional 'guarantees of the fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution *without probable cause*.'" *Hernandez v. Terrones*, 397 F.App'x 954, 966 (5th Cir. 2010) (quoting *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir.1988)). To determine whether probable cause existed for the arrest, and the subsequent detention, the court must "embark on a 'practical, common-sense [determination] whether given all of the circumstances' a reasonable officer could have believed 'there is a fair probability' [Plaintiff] committed the crime charged." *Id.* at 966-67 (quoting *Mendenhall v. Riser*, 213 F.3d 226, 231 ((5th Cir. 2000)). The court must undertake this inquiry by considering the "totality of the circumstances." *Id.* at 967.

    A) *Officer Blake Green*

Although Officer Green has been accused of violating Amanda House's Fourth and Fourteenth Amendment rights against unlawful arrest and detention, as well as Scott House's Fourth Amendment right against excessive force and unlawful search and seizure, none of these accusations succeed on the facts before the court. Therefore, Officer Green should be granted qualified immunity against all §1983 counts.

The preliminary test for any §1983 cause of action is whether (1) an official's conduct violated a constitutional right of the plaintiff and (2) that right was clearly established at the time of the violation. Any allegation put forth by Mrs. House concerning the failure of Officer Green to contact the Department of Human Services plainly fails because one is not constitutionally guaranteed the right to have a police officer contact DHS. All other allegations concerning Officer Green's conduct, outside of arresting and detaining Mrs. House, fail for same basic absence of any asserted constitutional right. Second, on the issue of improper arrest and detainment, the Fifth Circuit has consistently held that such action is indeed cognizable under a §1983 cause of action. *See Waites v. Lee County Miss.*, 498 Fed. App'x 401 (5th Cir. 2012); *U.S. v. Johnson*, 445 F. 3d 793 (5th Cir. 2006). Again, the pertinent inquiry concerning such accusations is whether the decision to pursue such an arrest is substantiated by objective facts that probable cause existed to justify the arrest, as viewed through the eyes of a reasonable officer and in light of the totality of the circumstances.

Even though the court must construe the facts in the plaintiff's favor, no possible interpretation could lead this court to believe that probable cause did not exist to arrest Mrs. House *for either of the crimes* for which she was arrested. Under Miss. Code Ann. §97-3-7 (2012), simple assault is defined as any "attempts by physical menace to put another in fear of imminent serious bodily harm." The statements made by Mrs. House, by her own admission,[17] could reasonably have been perceived as a threat by Officer Green, especially when combined with Officer Green's knowledge that Mrs. House had ready access to a loaded gun. Therefore, this court, viewing the totality of the circumstances, through the eyes of a reasonable officer *at that time*, finds these actions to be reasonable by Officer Green. Moreover, under Miss. Code

---

[17] Dep. Amanda House at 60:6-10.

Ann. §99-3-7 (2012), "[a]n officer or private person may arrest any person without warrant, for . . . a breach of the peace threatened or attempted in his presence." It is undisputed that Officer Green responded to a domestic disturbance call, and arrived to a scene of domestic disarray. There is no doubt that Officer Green observed facts sufficient to justify a breach of the peace before him. Therefore, viewing these facts under the totality of the circumstances, through the eyes of a reasonable officer *at that time*, this court finds the actions taken by Officer Green to be reasonable and Officer Green should be afforded qualified immunity as such.

  The crux of Mr. House's Fourth Amendment violation allegations against Officer Green seem to stem directly from two actions taken by Officer Green. First, Officer Green handcuffed Mr. House after Chief Schuh tasered him. Second, Officer Green dragged him to the aid and care of paramedics standing nearby at the scene. Assuming, for the purposes of this §1983 analysis, that Mr. House's Fourth Amendment rights against excessive force existed at the time and were violated by being handcuffed and dragged into the possession of nearby paramedics, the pertinent inquiry then becomes whether there was (1) an injury, (2) which resulted from the use of force that was clearly excessive to the need, and (3) the excessiveness of which was objectively unreasonable. Again, assuming that there was an injury, that was not attributable to the swift tasering that Mr. House had just received from Chief Schuh, but rather attributable to the "15 minute" handcuffing and/or being taken to the nearby ambulance, the plaintiff would still have to prove that either measure was a "force clearly excessive to the need" and the "excessiveness of which was objectively unreasonable." This court finds that both accusations, as well as all allegations against Officer Green by Mr. House, are completely without merit. Therefore, Officer Green should be afforded qualified immunity on all §1983 counts alleged against him, by both plaintiffs.

B) *Chief of Police Maury Schuh*

Chief Schuh has been accused of violating Amanda House's Fourth and Fourteenth Amendment rights against unlawful arrest and detention, as well as Scott House's Fourth Amendment right against excessive force and unlawful search and seizure. Maury Schuh did not participate in the arrest of Amanda House, and therefore should be granted qualified immunity on that count. However, because there exists a genuine issue of fact concerning Maury Schuh's right to qualified immunity concerning his use of a Taser against Mr. House, this court is not prepared to grant such immunity for Chief Schuh at this stage of summary judgment.

Assuming that Amanda House's constitutionally protected rights against unlawful detention exist, and were violated in manner consistent with fulfilling the prerequisites of a §1983 cause of action, Chief Schuh should still be afforded qualified immunity because *he did not participate in Mrs. House's arrest*. However, even if Schuh were to have participated in Mrs. House's arrest, he would have been authorized to act on information and belief provided to him by his first responding officer, Officer Green, and could have arrested Mrs. House for the same reasons as Officer Green. Therefore, Schuh should be afforded qualified immunity for his actions as pertaining to Amanda House's unlawful arrest and detention allegations.

Scott House's Fourth Amendment excessive force allegations against Chief Schuh require a more difficult and detailed analysis. As a preliminary matter, Mr. House possessed a constitutional right against use of excessive force, which was violated when he was tasered upon initial interaction with Chief Schuh. Moreover, it is clear that his right against such excessive force was clearly established at the time of the violation. Therefore, the proper inquiry concerning Chief Schuh's conduct is whether there was an injury to Mr. House which resulted

from a use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable.

Two streams of law dealing with qualified immunity in the realm of tasers have developed in the Fifth Circuit in recent years. Both converge in the instant facts. First, the Fifth Circuit has acknowledged the growing need for officers to exercise *at least some* discretion in their use and deployment of a Taser, and has even rejected qualified immunity for some officers' use of a Taser, especially in circumstances in which the plaintiff wasn't attempting flight from the scene. *See Williams*, 736 F.3d at 688; *see also Ramirez v. Martinez*, 716 F.3d 369, 380 (5th Cir. 2013); *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir.2012); *Massey v. Wharton*, 477 Fed. App'x. 256, 263 (5th Cir. 2012). Second, the Fifth Circuit has also recognized that officers responding to a potential suicide call, should exercise *at least some* discretion in their attempts to neutralize the situation, especially where there is "no immediate threat to the officers or to others." *Khansari v. City of Houston*, No. Civ.A H-13-2722, 2014 WL 1401857, at *9 (S.D. Tex. Apr. 9, 2014); *see also Rockwell v. Brown*, 664 F.3d 985, 997 (5th Cir. 2011) ("Preventing a possible suicide is a worthy goal, but an armed entry that heightens the risk to the potential victim's life certainly is not the best way to accomplish that goal.").

It is unclear whether Mr. House had both his hands in clear sight of Chief Schuh when he opened his door to respond to the demands of the officers. However, construing the facts in a light most favorable to the plaintiff, this court must assume, at this stage, that his hands were by his sides for the entirety of his interaction with Schuh. If Mr. House's hands were indeed by his side, in clear sight of Chief Schuh, it is difficult to imagine that immediately firing 50,000 volts of electricity into Mr. House's body, as soon as he opened the door, wouldn't be an excessive *first resort* in trying to ensure the safety of a potential suicide victim. Without provocation,

threat, flight, or any other cognizable immediate danger to the officers or to others, this court is not prepared to grant Chief Schuh qualified immunity for his actions against Mr. House at this summary judgment stage. This question is best left to be resolved in further proceedings before the court.

### Official Immunity of Individual Officers under the MTCA

Under Miss. Code Ann. 11-46-9(1),

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> **********
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in *reckless disregard of the safety and well-being of any person not engaged in criminal activity* at the time of injury. (emphasis added).

An officer's "reckless disregard" for the "safety and well-being of a person not engaged in criminal activity" under the Mississippi Torts Claims Act has been consistently held to require a higher standard than gross negligence, and instead requires willful and wanton conduct from the officer. *See City of Jackson v. Gardner*, 108 So. 3d 927 (Miss. 2013); *City of Jackson v. Presley*, 40 So. 3d 520 (Miss. 2010). Willful and wanton conduct typically requires an officer to knowingly and intentionally perform a wrongful act and is usually accompanied by a conscious indifference to consequences, almost amounting to a willingness that some harm should follow the conduct. *See id.*

A) *Officer Blake Green*

Amanda House has alleged, although rather indirectly, that some cause of action might exist as to her being maliciously prosecuted, ostensibly by Officer Green. Because the Fifth Circuit disclaims malicious prosecution as a § 1983 constitutional tort, Mrs. House can only proceed under the guide of Mississippi state law for such a claim. *See Castellano v. Fragozo*,

352 F.3d 939 (5th Cir. 2003). Under Mississippi law, a plaintiff must prove that there was "1) the institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of the injury or damage as a result of the prosecution." *Oliver v. Skinner*, 2013 WL 667664, at *5 (S.D. Miss., Feb. 22, 2013). Further, a "[f]ailure to prove any element . . . is fatal to the plaintiff's claim," and such actions should be managed with "great caution." *Id.*

Plaintiff's allegations against Officer Green, as the arresting officer, concerning any such malicious prosecution are misplaced and misguided. Officer Green had sufficient probable cause to arrest Ms. House on not one, but two separate charges. Further, the plaintiff has not offered any proof of malice, a high burden in itself, from Officer Green concerning his arrest of Mrs. House, much less in instituting the proceeding against Mrs. House. Therefore, Officer Green should not be held liable for malicious prosecution for any of his conduct in arresting, detaining, transporting, and facilitating the probable cause arrest of Mrs. House for either of her charged offenses.

Scott House has alleged that Officer Green used excessive force when he handcuffed Mr. House and took him to receive medical attention from a nearby paramedic. The handcuffing of an individual, even if alleged to have been performed without cause and *too tightly*, without further allegations, will not be sufficient to sustain an excessive use of force claim under the MTCA. *See Brassell v. Turner*, 468 F. Supp. 2d 854 (S.D. Miss. 2006). Further, there are no facts before the court to substantiate any claim that temporarily handcuffing an individual, while officers perform a safety sweep of the premises, constitutes any amount of "reckless disregard" for the "safety and well-being" of Mr. House. In fact, Officer Green's conduct seems to only

further ensure Mr. House's safety while the safety sweep was being performed. Moreover, any allegation concerning Officer Green's reckless disregard for Mr. House's safety and well-being *while Officer Green was escorting Mr. House to the nearby paramedics* follows the same fate as his handcuffing allegations. Therefore, Officer Green should not be held liable under Miss. Code Ann. 11-46-9(1) for any of his conduct in temporarily detaining and facilitating the medical attention of Mr. House.

    B) *Chief of Police Maury Schuh*

The Mississippi Supreme Court has been very clear that the appropriate inquiry for determining whether official immunity exists under Miss. Code Ann. 11-46-9(1) must be "judged on an objective standard with all the factors that they were confronted with, taking into account the fact that the officers must make split-second decisions" and without the benefit of "20/20 vision hindsight." *Phillips v. Mississippi Dep't of Pub. Safety*, 978 So. 2d 656, 661 (Miss. 2008). This inquiry, however, has been classified by the Mississippi Supreme Court as only appropriate when there exists a prerequisite or underlying criminal offense or activity at the time of the accident in question. *City of Jackson v. Harris*, 44 So. 3d 927, 934 (Miss. 2010). The controlling factor is whether an attempted suicide qualifies as a criminal activity or offense. In *Nicholson on Behalf of Gollott v. State*, 672 So. 2d 744 (Miss. 1996), the Mississippi Supreme Court addressed just that question. Justice Prather, speaking for the court opined

> Attempted suicide has not been declared unlawful by the positive law of the State of Mississippi. In fact the legislature has addressed the subject of suicide but has not taken the opportunity to proscribe attempted suicide or suicide. If the legislature desires *to make attempted suicide a criminal matter then it should*. However, it is not this court's province to *create crimes and then punish them*. *Nicholson*, 672 So. 2d at 756-57 (emphasis added) (citations omitted).

It is the opinion of this court, therefore, that under the current interpretations of the Mississippi Torts Claims Act and the lack of legislative evidence or intent to impose criminal

liability on a person attempting suicide within the state, there existed no criminal activity or offense on which the actions of Chief Schuh might be predicated. Moreover, there exists no basis for an officer acting reasonably, even under the totality of the circumstances and without the benefit of 20/20 hindsight, to employ a Taser as the first resort to aid and assist a potential suicide victim upon first interaction. Therefore, in construing the facts in a light most favorable to the plaintiff, there exists an unresolved material fact as to whether Mr. House ever motioned in any way that could indicate a threat or the possibility of danger to Chief Schuh, Officer Green, or even himself. Without such a provocation, threat, flight, or any other immediate danger to the officers or to others, under the current interpretations of the MTCA, as well as the lack of any statutory authority or legislative intent to impose criminal liability on a person attempting suicide within the state, this court is not prepared to grant Schuh official immunity for his actions against Mr. House at this summary judgment stage. This court feels it is a question better left to be resolved in further proceedings before the court.

## Municipal Liability

It is evident from the face of the Complaint that a §1983 cause of action against the City of Plantersville has not been sufficiently pleaded, even to withstand a Rule 12(b)(6) dismissal. Nevertheless, this court will examine the facts as if they were sufficiently pleaded, in order to ensure the most comprehensive and in-depth analysis of the allegations before the court. In *Monell v. Department of Social Services of the State of New York*, 436 U.S. 658 (1978), and its progeny, the Supreme Court held, and has consistently held, that a municipality may be held responsible under §1983. However, the municipality may never be held so under a theory of *respondent superior*, i.e., a municipality can not be held liable for the actions of one of its employees simply because that employee violated another person's federal rights. *Id.* In order

for municipal liability to arise under §1983, the plaintiff must establish that the municipality caused the alleged injuries through its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 2037-38. The Fifth Circuit has established that a municipality is almost never responsible for the individual unconstitutional action of one wayward employee and has determined that the requisite elements of any municipality liability under § 1983 require plaintiffs to show "(1) an official policy (2) promulgated by the municipal policymaker (3) [that] was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Moreover, a policy is only official if "it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Id.* (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Plaintiffs contend that the City of Plantersville lacked any official Taser policy or training while Chief Schuh and Officer Green were employed. However, no evidence exists in the record as to what party the plaintiffs allege to have such "policymaking authority" within the City of Plantersville. Assuming *arguendo*, that either Chief Schuh, or the board of councilman that eventually fired him, had the requisite policymaking authority, both arguments fail because a Taser-specific use of force policy for the City of Plantersville and the individual Taser training certificates for both Chief Schuh and Officer Green have been submitted to the court.[18] Therefore, there exists no cognizable theory under which the City of Plantersville could be held liable for the conduct of Chief Schuh or Officer Green, because, quite simply, both Taser

---

[18] *See* Officer Green and The City of Plantersville's Reply In Support of Motion for Summary Judgment at Plantersville Police Department Taser Policy, Ex. K; Taser Certification of Blake Green, Ex. P; Professional Certificate of Blake Green, Ex. Q; Taser Certification of Maury Schuh, Ex. R; & Professional Certificate of Maury Schuh, Ex. S.

training protocols and use of force policies existed during both officers' employment period with the municipality.

For the forgoing reasons, defendants BLAKE GREEN and THE CITY OF PLANTERSVILLE's motions for summary judgment based on qualified and official immunity are GRANTED and defendant MAURY SCHUH's motion for summary judgment [Docket No. 58] based on qualified and official immunity is DENIED.

So ORDERED this the 8th day of December, 2014.

/s/ MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI